☐ Original



CLERK'S OFFICE
A TRUE COPY
Jul 18, 2024
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Information associated with<br>geoff.harvey1@gmail.com that is stored at<br>premises controlled by Apple | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. **24-M-447 (SCD)**

Matter No. 2022R00208

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:       Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____ *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before        8-1-24        *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.      ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to        Hon. Stephen C. Dries        .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:        7-18-24. 10:05 am

*Judge's signature*

City and state:   Milwaukee, Wisconsin

Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# ATTACHMENT A

## Property to Be Searched

## Matter No. 2022R00208

This warrant applies to information associated with **geoff.harvey1@gmail.com** that is stored at premises owned, maintained, controlled, or operated by Apple Inc., a company headquartered at One Apple Park Way, Cupertino, California. The contents have been previously preserved by Apple reference 202300429876 and 202400518406.

1

**Particular Things to be Seized**

**Matter No. 2022R00208**

**I.** **Information to be Disclosed by Apple Inc. ("Apple" or the "Service Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Apple, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) under reference numbers 202300429876 and 202400518406, Apple is required to disclose the following information to the government for each account or identifier listed in Attachment A, for the time period of January 1, 2020, through the present:

a. All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

b. All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

c. The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account (including all draft emails and

deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

d.      The contents of all instant messages associated with the account, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

e.      The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

f.      All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and capability query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My and AirTag logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

g.      All records and information regarding locations where the account or devices associated with the account were accessed, including all data stored in connection with AirTags, Location Services, Find My, and Apple Maps;

j.      All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

**The Service Provider is hereby ordered to disclose the above information to the government within FOURTEEN (14) DAYS of issuance of this warrant.**

## II. Information to be Seized by the Government

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 511 (VIN alteration), and 18 U.S.C. §§ 2312 and 2313 (transportation of stolen vehicles and sale or receipt of stolen vehicles), involving DIAUNTE SHIELDS, GEOFFREY HARVEY, and/or any other known or unknown co-conspirators, for the period of January 1, 2020, through the present, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

   (a) Location information associated with the co-conspirators, call and message records associated with the co-conspirators, and records related to stolen vehicles, VINs and titles, the transportation of vehicles, and money transfers;
   (b) Evidence indicating how and when the account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crimes under investigation and to the account owner;
   (c) Evidence indicating the account owner's state of mind as it relates to the crimes under investigation;
   (d) The identity of the person(s) who created or used the account, including records that help reveal the whereabouts of such person(s).
   (e) The identity of the person(s) who communicated with the account user about matters relating to the crimes described herein.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

4



CLERK'S OFFICE
A TRUE COPY
Jul 18, 2024
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

Information associated with geoff.harvey1@gmail.com that is stored at premises controlled by Apple

)
)
)
)
)
)
)

Case No. **24-M-447 (SCD)**

Matter No. 2022R00208

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC §§ 371, 511, 2312, 2313 | Conspiracy, VIN Alteration, Transportation of Stolen Vehicles, Sale/Receipt of Stolen Vehicles |

The application is based on these facts:

See Affidavit

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

FBI SA Shane Hoffmann
_____
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means)*.

Date: 7-18-24

_____
Judge's signature

City and state: Milwaukee, Wisconsin

Stephen C. Dries, U.S. Magistrate Judge
_____
Printed name and title

<u>**AFFIDAVIT IN SUPPORT OF AN**</u>
<u>**APPLICATION FOR A SEARCH WARRANT**</u>

I, Shane Hoffmann, being first duly sworn, hereby depose and state as follows:

1.      I make this affidavit in support of an application for a search warrant for information associated with certain accounts that are stored at premises owned, maintained, controlled, or operated by Apple Inc. ("Apple"), an electronic communications service and/or remote computing service provider headquartered at One Apple Park Way, Cupertino, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Apple to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since September 2015.  I am currently assigned to the Milwaukee Division – Madison Resident Agency. Since becoming a Special Agent, I have received specialized training in conducting criminal investigations, and my responsibilities include conducting investigations of alleged criminal violations of federal statutes and laws.  I have participated in the execution of search warrants in various judicial districts,

including the recovery of records, contraband, and other types of property. I have received training in computer technology, and I have on numerous occasions reviewed the content of targets' phones and computers, email accounts, and social media accounts for evidence of criminal activity.

3. This affidavit is based upon my personal knowledge, and upon information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROPERTY TO BE SEARCHED

4. The Apple iCloud account to be searched is: **geoff.harvey1@gmail.com**

## PROBABLE CAUSE

### Background

5. The United States, including Federal Bureau of Investigation, together with other federal, state, and local law enforcement partners, is conducting a criminal investigation of DIAUNTE D. SHIELDS (DOB: 02/18/1995), GEOFFREY M. HARVEY (DOB: 07/22/1990), and others known and unknown, regarding possible violations of, among other crimes, 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 511 (altering VINs), and 18 U.S.C. §§ 2312 and 2313 (transportation of stolen vehicles and sale or receipt of stolen vehicles).

2

6. More specifically, the investigation has revealed a nationwide criminal enterprise involved in a variety of illicit activities. The hubs of their conduct include the areas in and around Milwaukee, Wisconsin, Chicago, Illinois, and Atlanta, Georgia. In addition to possessing and transporting a significant quantity of drugs, the enterprise also engages in the theft and resale of high-end automobiles including Dodge Ram TRXs, Dodge Challenger Hellcats, Cadillac Escalades, Chevrolet Corvettes, Jeep Trackhawks, Jeep SRTs, GMC Yukons, Chevy Suburbans, and others. The enterprise acquires the vehicles from a variety of sources, including stealing them from private properties, public parking lots including airports, rental car facilities, dealerships, and assembly plants. The vehicles are often stolen utilizing key reprogramming technology. Investigators have also learned that targets utilize GPS tracking technology to track vehicles targeted for theft. To date, investigators have linked hundreds of stolen vehicles to the group with a value exceeding $10 million dollars. Although the vehicles are often resold well below market value, the actors profit significantly from the resale of vehicles.

7. Upon acquiring a stolen vehicle, the enterprise "cleans" the vehicle by equipping it with a new (false) Vehicle Identification Number (VIN). They change the public VIN plate on the dashboard and the stickers on the driver side door to denote the new false VIN. The false VINs are often completely fabricated; the vehicles' manufacturers have confirmed numerous times that the VINs used by the enterprise, discovered or identified in the investigation, never existed on a legitimate vehicle.

3

8. The investigation has determined that SHIELDS has been participating in this activity since at least 2019. He and his associates distribute the "cleaned" stolen vehicles from coast to coast through the use of "runners" and commercial haulers.

**Relationship Between SHIELDS and HARVEY**

9. A review of text messages obtained from iCloud accounts and electronic evidence connected to SHIELDS shows that SHIELDS and HARVEY have been close associates since January 2020 up until the time of SHIELDS's arrest in November 2023. As demonstrated below, SHIELDS and HARVEY have significantly collaborated in the theft, VIN alteration, and transport of stolen vehicles throughout the United States.

10. Apple confirmed that the iCloud account **geoff.harvey1@gmail.com**, the **TARGET ACCOUNT**, was created on February 14, 2011, with a subscriber address of 115 Deer Glen Drive, Fayetteville, Georgia, and an associated phone number of 404-425-2584. Apple records indicate that the message retention feature was enabled on the **TARGET ACCOUNT**.

11. The investigation has linked multiple phone numbers to HARVEY including 404-425-2584 (the phone number associated with the **TARGET ACCOUNT**), 470-624-1474, 470-862-0382, and 305-613-8236. The referenced phone numbers have been found in electronic evidence attributed to SHIELDS including iCloud accounts bocruz0218@icloud.com, devon5578@icloud.com, champrob221@icloud.com, and jeff071293@icloud.com; in addition to a blue Apple iPhone identified by FBI evidence

4

number 1B197 which was collected during the execution of a search warrant at SHIELDS's apartment in Illinois on November 29, 2023.

A. Verizon confirmed that phone number 404-425-2584 (the phone number associated with the **TARGET ACCOUNT**) was subscribed to GEOFFREY HARVEY from May 28, 2021, through December 27, 2022. Phone number 404-425-2584 was listed as contact "Jeff 1" in bocruz0218@icloud.com and 1B197, "Jeff" in devon5578@icloud.com, and "J" in champrob221@icloud.com. Messages from iCloud accounts and 1B197 show that SHIELDS communicated with this number from January 2020 through September 2022. Per a text message on champrob221@icloud.com on July 12, 2020, SHIELDS asks for HARVEY's full name and HARVEY responds, "Geoffrey Harvey."

B. T-Mobile confirmed that phone number 470-624-1474 was subscribed to "Devin Sampson" with an activation date of March 2, 2022, and a termination date of June 2, 2022. The associated address was 16737 Porter Avenue, Montverde, Florida. Phone number 470-624-1474 was listed as contact "Jeff" in bocruz0218@icloud.com and "Jeff 2" in devon5578@icloud.com. The iCloud account devon5578@icloud.com has messages with phone number 470-624-1474 from April 22, 2022.

C. Subscriber information for 470-862-0382 is pending from T-Mobile, but evidence from 1B197 shows that SHIELDS communicated with this phone

number from June 2022 through September 2022. On two occasions SHIELDS sent messages to this phone number using the name "Jeff."

D. ATT confirmed that phone number 305-613-8236 was subscribed to "Sam Doe" with an activation date of September 26, 2022. Phone number 305-613-8236 was listed as contact "Jeff 2" in [bocruz0218@icloud.com](mailto:bocruz0218@icloud.com) and 1B197, and "Jeff" in [jeff071293@icloud.com](mailto:jeff071293@icloud.com). Text messages from 1B197 show that SHIELDS communicated with this phone number approximately 5,000 times from September 26, 2022, through November 28, 2023.

### HARVEY's Involvement in Stolen Vehicle Resale

12. Messages in SHIELDS's iCloud accounts and SHIELDS's phone (1B197) demonstrate the partnership between SHIELDS and HARVEY and the illegal vehicle related activities they engaged in including arranging the shipment of vehicles across the country. A review of shipping records indicates that HARVEY and/or his phone numbers were linked to numerous shipments spanning 2020 through 2023. Vehicle identifiers, such as VINS or license plates, were sometimes documented in the shipping records. An analysis of these identifiers showed that SHIELDS, HARVEY, and associates were responsible for shipping stolen vehicles that had been subjected to VIN alteration. Three examples of vehicle shipments connected to HARVEY are as follows:

A. Per messages from [champrob221@icloud.com](mailto:champrob221@icloud.com) on or about July 9, 2020, HARVEY texted SHIELDS, "4100 Admiralty Way, Marina del Rey,

6

CA…..Anywhere close to this area." SHIELDS relayed this address via text to a transport hauler and responded to HARVEY with the following text, "So the driver is currently stuck in Salt Lake City he will be at that location tomorrow at 11. And it's not 1600 it's 1400." HARVEY also texted, "Ok cool. Need more widebody's ASAP." Based on my training, experience, and knowledge attained from the investigation, I believe that HARVEY was providing SHIELDS a delivery address for a vehicle shipment that SHIELDS was relaying to the driver. The investigation has shown that SHIELDS and associates used commercial shippers to transfer stolen vehicles throughout the country. SHIELDS was also relaying to HARVEY that the shipping price was $1400. In addition, HARVEY told SHIELDS that he needed more "widebody's ASAP" which I know refers to a specific type of Dodge Challenger which is a performance vehicle the enterprise targets for theft and resale.

B. Per transport records from Brave Brokerage, a commercial shipping broker used by SHIELDS and HARVEY to arrange interstate transport of stolen vehicles, on or about March 12, 2021, a shipment was arranged for a 2021 BMW 440i with a pickup and delivery name of "Jay." The pickup address was 7820 NW Sixth Ct, Miami, Florida, and the delivery address was 200 Banks Road, Fayetteville, Georgia, just a few minutes

7

from HARVEY's residence. The associated phone number for pick-up and delivery was 404-425-2584, the phone number connected to the **TARGET ACCOUNT**.

C. On or about April 7, 2022, a shipment was arranged for a 2021 Chevrolet Corvette with a pickup and delivery name of "Devin Sampson." The pickup address was 800 Galleria Parkway, Atlanta, Georgia, and the delivery address was 14100 Fullerton, Detroit, Michigan. The associated phone number for pickup and delivery was 470-624-1474 (a phone number linked to HARVEY, as described above). The bill of lading from Teleport Auto LLC, the actual transport company, confirmed that a Corvette was shipped on April 7, 2022, and delivered on April 8, 2022. Photographs taken indicated a VIN of 1G1YB3D4XM5111569 displayed as the public (dashboard) VIN and on a sticker of the Corvette. Records indicate that the Corvette with VIN 1G1YB3D4XM5111569 was stolen from a dealership in Illinois in November 2021, and recovered by law enforcement in Detroit, Michigan, on or about April 25, 2022, approximately two weeks after being shipped to Detroit.

8

*Stolen 2021 Dodge Durango with fraudulent VIN 1C4SDJGJ4MC577586*

13.	Per messages on 1B197, on June 30, 2022, HARVEY, utilizing phone number 470-862-0382, texted SHIELDS the VIN, "1C4SDJGJ4MC577586." SHIELDS then texted BRANDON MULLINS, a known supplier of fraudulent titles, a CARFAX image displaying 1C4SDJGJ4MC577586 which returned to a 2021 Dodge Durango SRT 392. MULLINS then texted SHIELDS an image of three Georgia titles including one displaying VIN 1C4SDJGJ4MC577586 for a white 2021 Dodge Durango SRT 392 with 16,076 miles. The title was in the name of Michelle Davis, 980 Howell Mill Rd, Atlanta, GA.

14.	Per messages on 1B197, on July 11, 2022, SHIELDS texted MULLINS an image of the Georgia title with VIN 1C4SDJGJ4MC577586 and asked for the name to be changed to "Tony Carson." MULLINS then sent SHIELDS an image displaying a title template, but printed on copy paper, displaying VIN 1C4SDJGJ4MC577586 for a white 2021 Dodge Durango SRT 392 with 16,076 miles. The title was in the name of Tony Carson, 634 Reid Rd SW, Atlanta, GA. MULLINS asked SHIELDS to check the document and SHIELDS gave his approval. Approximately one hour later MULLINS sent SHIELDS a United States Postal Service receipt showing a tracking number for one-day delivery from Stone Mountain, Georgia, to Milwaukee, Wisconsin.

15.	Per records from the Wisconsin DMV, on July 29, 2022, a Wisconsin registration for a white 2021 Dodge Durango in the name of Tony Carson was presented and granted using a fraudulent Georgia title in the name of Tony Carson.

9

16.     Based on my training, experience, and knowledge attained through this investigation, I believe that HARVEY supplied SHIELDS with a fictitious VIN that SHIELDS then used to have MULLINS create a fraudulent Georgia title in their attempts to "clean" a stolen vehicle by registering it in Milwaukee, Wisconsin.

*2022 Orange Ford Bronco with manufactured VIN 1FMEE5JR9NLA51323*

17.     In October and November 2022 SHIELDS and HARVEY coordinated the shipment of a VIN-altered orange 2022 Ford Bronco Raptor (further referred to as the "orange Bronco") that was stolen from a manufacturing facility in Michigan in early October 2022.  The manufactured VIN on the orange Bronco was 1FMEE5JR9NLA51323. Per precision location information associated with the orange Bronco, on or about October 21, 2022, the vehicle was driven from Michigan to Milwaukee, Wisconsin, in conjunction with a second stolen 2022 Ford Bronco Raptor.

18.     On October 31, 2022, messages from 1B197 showed SHIELDS started to arrange the shipment of the orange Bronco with the shipping broker Brave Brokerage. After the broker asked SHIELDS for shipping details, HARVEY, utilizing phone number 305-613-8236, texted SHIELDS, "101 Banks Road Fayetteville, GA, 30214" which SHIELDS then conveyed to the broker.

19.     On November 2, 2022, Wisconsin DMV records indicate that a Wisconsin registration was applied for and granted for the orange Bronco. The registration paperwork and fraudulent Georgia title that were presented at the DMV associated the

10

orange Bronco to fraudulent VIN 1FMEE5JR9NLA58756. The orange Bronco was assigned Wisconsin license plate ASB5308. It is noted that jeff071293@icould.com, an account that has been linked to SHIELDS, had an image with a capture date of October 31, 2022, showing five public (dashboard) VINs including the fraudulent VIN represented on the orange Bronco paperwork.

20. Per shipping records, on November 5, 2022, the orange Bronco and a stolen Jeep were shipped from Milwaukee, Wisconsin, to Fayetteville, Georgia. Photographs from the records confirm that the orange Bronco had Wisconsin plate ASB5308.

21. Per messages from 1B197, on November 6, 2022, HARVEY texted SHIELDS, "…What time driver supposed to get here & how much they?" The conversation continued with SHIELDS asking HARVEY when he wanted the cars and HARVEY said, "Tonight." HARVEY and SHIELDS continued to discuss how much was owed and the arrival time of the orange Bronco and Jeep.

22. Per shipping records, the orange Bronco and the Jeep were delivered on November 7, 2022, at approximately 12:39 am. The delivery signature on the shipper paperwork read "Devin Sampson." Around 12:38 am, HARVEY texted SHIELDS an image of the orange Bronco on a trailer and said, "Nav is still active bro." Based on my training, experience, and knowledge gained from this investigation, I believe that HARVEY is telling SHIELDS that the navigation system on the orange Bronco is still active which would mean the vehicle could still possibly be tracked. I know that people

11

involved in the theft and transport of vehicles try to disable GPS and navigation systems as soon as possible after theft to impede recovery efforts.

23. In September 2023, the orange Bronco was recovered in Clayton County, Georgia. Upon recovery the serial numbers on the transmission and engine were obliterated and the fraudulent VIN was displayed as the public VIN on the dashboard. A secondary VIN location confirmed the manufactured VIN.

*2021 white Mercedes Benz S580 with fraudulent VIN* W1K6G7GB4MA043798

24. Per 1B197, on December 27, 2022, HARVEY, utilizing phone number 305-613-8236, sent SHIELDS an image of a white Mercedes Benz S580 with Georgia temporary license plate S1399311 on a car trailer. Their conversation continued with HARVEY providing the car hauler's contact information to SHIELDS and informing SHIELDS that $500 was to be paid to the driver upon delivery.

25. Vehicle registration information for Georgia temporary license plate S1399311 resolved to a 2021 white Mercedes with VIN W1K6G7GB4MA043798. Mercedes Benz confirmed that the referenced VIN never existed and was fraudulent.

26. Per shipping records received from Brave Brokerage, on or about December 27, 2022, a white 2021 Mercedes Benz S580 was shipped from Atlanta, Georgia, to Cicero, Illinois. The associated phone number for pick-up and delivery was HARVEY's 305-613-8236 phone number.

27. Per 1B197, on December 30, 2022, HARVEY, utilizing phone number 305-613-8236, received a text message from SHIELDS saying, "You got the Benz VIN?" HARVEY sent SHIELDS an Autocheck image with fraudulent VIN W1K6G7GB4MA043798. SHIELDS then told HARVEY to, "use the Benz with this name and fl addy" and sent a screenshot depicting "Kat Groomers LLC."

28. Per 1B197, on December 31, 2022, HARVEY sent SHIELDS an image of a Florida title with fraudulent VIN W1K6G7GB4MA043798 for a 2021 Mercedes with 1,089 miles in the name of "Kat Groomers LLC" with a Florida address.

29. On January 3, 2023, law enforcement surveillance observed the white 2021 Mercedes at the residence of SHIELDS in Milwaukee, Wisconsin. The public (dashboard) VIN observed was fraudulent VIN W1K6G7GB4MA043798. The license plate observed was Michigan dealer plate 468D50 which SHIELDS and associates routinely utilized on stolen vehicles.

30. Based on my training, experience, and knowledge attained through this investigation, I believe that HARVEY and SHIELDS arranged to have a likely stolen vehicle equipped with a fraudulent VIN and a counterfeit Florida title be shipped from Georgia to Illinois ultimately ending up in Milwaukee, Wisconsin.

### Summary

31. Based on the communications described above and others in SHIELDS's iCloud accounts and devices in law enforcement custody, HARVEY and SHIELDS have

been close associates since at least January 2020 and remained in contact up until SHIELDS's arrest in November 2023. During this timeframe they communicated using text messages as demonstrated above. Through these messages, SHIELDS and HARVEY collaborated in a number of illegal activities involving high end vehicles including theft, VIN alterations, falsifying titles, and interstate transportation.

32. To date, the investigation has recovered valuable evidence from iCloud accounts linked to SHIELDS and his associates. The evidence has led to an understanding of how the nationwide enterprise operates including the identification of co-conspirators, locations, and methods. By obtaining and reviewing messages, images, contacts, notes, location data, emails, and other items from the **TARGET ACCOUNT**, investigators hope to further understand the role of HARVEY in the organization, in addition to further illuminating additional criminal activity and co-conspirators involved in HARVEY's working relationship with SHIELDS.

33. With this warrant, investigators seek information from the iCloud account **geoff.harvey1@gmail.com**, associated with a known phone number and address for HARVEY, from January 2020 through the present. This timeframe is based on the beginning of the established working relationship between HARVEY and SHIELDS, through and past the time of SHIELDS's arrest to account for any continuing conduct by HARVEY and SHIELD's associates, and any consequences of SHIELDS's arrest.

14

34. On approximately November 28, 2023, Apple was served with a preservation request for records pertaining to the **TARGET ACCOUNT**. Apple acknowledged receipt of the preservation request and provided reference number 202300429876 and a reference number of 202400518406 for the preservation extension. Apple has indicated that the user's messages are backed up to the iCloud account.

35. Based on the above, I have reason to believe that HARVEY used his cell phone(s), connected to an associated iCloud account, to facilitate his crimes, and has kept and maintained evidence of those crimes on the **TARGET ACCOUNT**.

**BACKGROUND CONCERNING APPLE**[1]

36. Apple is a United States company that produces the iPhone, iPad, and iPod Touch, all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

37. Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop

---

[1] The information in this section is based on information published by Apple on its website, including, but not limited to, the following document and webpages: "U.S. Law Enforcement Legal Process Guidelines," available at https://www.apple.com/legal/privacy/law-enforcement-guidelines-us.pdf; "Create and start using an Apple ID," available at https://support.apple.com/en-us/HT203993; "iCloud," available at http://www.apple.com/icloud/; "What does iCloud back up?," available at https://support.apple.com/kb/PH12519; "iOS Security," available at https://www.apple.com/business/docs/iOS_Security_Guide.pdf, and "iCloud: How Can I Use iCloud?," available at https://support.apple.com/kb/PH26502.

15

applications ("apps").  As described in further detail below, the services include email, instant messaging, and file storage:

a.  Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

b.  iMessage and FaceTime allow users of Apple devices to communicate in real-time.  iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct audio and video calls.

c.  iCloud is a cloud storage and cloud computing service from Apple that allows its users to interact with Apple's servers to utilize iCloud-connected services to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device.  For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on iCloud.com.  iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers.  iCloud Drive can be used to store presentations, spreadsheets, and other documents.  iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices.  iCloud Backup allows users to create a backup of their device data. iWork Apps, a suite of productivity apps (Pages, Numbers,

16

Keynote, and Notes), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations. iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

d. Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

e. Find My iPhone allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of those devices. Find My Friends allows owners of Apple devices to share locations.

f. Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

g. App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS. Additional digital content, including music, movies, and television shows, can be purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

38. Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services.

17

The account identifier for an Apple ID is an email address, provided by the user. Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail). The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address. Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user. A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

39. Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers. The user may also provide means of payment for products offered by Apple. The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website. In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

18

40. Additional information is captured by Apple in connection with the use of an Apple ID to access certain services. For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website. Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, "query logs" for iMessage, and "mail logs" for activity over an Apple-provided email account. Records relating to the use of the Find My iPhone service, including connection logs and requests to remotely lock or erase a device, are also maintained by Apple.

41. Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card. Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs into FaceTime or iMessage. Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number. In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com. Apple also retains records related to

19

communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

42.     Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space.  That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWork and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain).  iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data.  Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging service, can be configured to regularly back up a user's instant messages on iCloud Drive.  Some of this data is stored on Apple's servers in an encrypted form but can nonetheless be decrypted by Apple.

43.     In my training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above.  This evidence may establish the "who,

20

what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

44. For example, the stored communications and files connected to an Apple ID may provide direct evidence of the offenses under investigation. Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation. Further, I know from the investigation to date that SHIELDS has used iCloud accounts in the past to facilitate his criminal conduct and keep and maintain records of such criminal conduct, including photographs, videos, screenshots of web inquiries, and screenshots of contact information.

45. In addition, the user's account activity, logs, stored electronic communications, and other data retained by Apple can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device

21

identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

46. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

47. Other information connected to an Apple ID may lead to the discovery of additional evidence. For example, the identification of apps downloaded from App Store and iTunes Store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

48. Therefore, Apple's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Apple's services. In my training and experience, such information may constitute evidence of the

22

crimes under investigation including information that can be used to identify the account's user or users.

## CONCLUSION

49. Based on the forgoing, I request that the Court issue the proposed search warrant.

50. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Apple. Because the warrant will be served on Apple, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

# ATTACHMENT A

## Property to Be Searched

## Matter No. 2022R00208

This warrant applies to information associated with **geoff.harvey1@gmail.com** that is stored at premises owned, maintained, controlled, or operated by Apple Inc., a company headquartered at One Apple Park Way, Cupertino, California. The contents have been previously preserved by Apple reference 202300429876 and 202400518406.

1

**Particular Things to be Seized**

**Matter No. 2022R00208**

**I.     Information to be Disclosed by Apple Inc. ("Apple" or the "Service Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Apple, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) under reference numbers 202300429876 and 202400518406, Apple is required to disclose the following information to the government for each account or identifier listed in Attachment A, for the time period of January 1, 2020, through the present:

a.     All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

b.     All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

c.     The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account (including all draft emails and

deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

d.  The contents of all instant messages associated with the account, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

e.  The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

f.  All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and capability query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My and AirTag logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

g.  All records and information regarding locations where the account or devices associated with the account were accessed, including all data stored in connection with AirTags, Location Services, Find My, and Apple Maps;

j.  All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

**The Service Provider is hereby ordered to disclose the above information to the government within FOURTEEN (14) DAYS of issuance of this warrant.**

3

## II.    Information to be Seized by the Government

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 511 (VIN alteration), and 18 U.S.C. §§ 2312 and 2313 (transportation of stolen vehicles and sale or receipt of stolen vehicles), involving DIAUNTE SHIELDS, GEOFFREY HARVEY, and/or any other known or unknown co-conspirators, for the period of January 1, 2020, through the present, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a) Location information associated with the co-conspirators, call and message records associated with the co-conspirators, and records related to stolen vehicles, VINs and titles, the transportation of vehicles, and money transfers;

(b) Evidence indicating how and when the account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crimes under investigation and to the account owner;

(c) Evidence indicating the account owner's state of mind as it relates to the crimes under investigation;

(d) The identity of the person(s) who created or used the account, including records that help reveal the whereabouts of such person(s).

(e) The identity of the person(s) who communicated with the account user about matters relating to the crimes described herein.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

4